JOURNAL ENTRY AND OPINION *Page 3 
{¶ 1} Plaintiff-appellant, Catherine DeMell ("DeMell"), appeals the trial court's granting the defense motion to dismiss her claim for retaliatory wrongful termination in violation of public policy. Finding no merit to the appeal, we affirm.
 {¶ 2} In July 2005, DeMell was discharged from her employment with the defendant-appellee, Cleveland Clinic Foundation, et al. ("Clinic"). She had been employed with the Clinic for over thirty years. At the time of her discharge, she was paid on an hourly basis as a non-exempt employee in the radiology department.
 {¶ 3} In January 2006, DeMell filed suit against the Clinic, alleging that she was underpaid and wrongfully terminated in violation of public policy because she had requested remediation. She also claimed that she was forced to falsify her timekeeping records as a part of her employment at the Clinic. In the complaint, DeMell claimed to be pursuing the action under "the common law and public policies of the State of Ohio." She stated that "she is not pursuing and has never intended to pursue * * * a * * * course of action under any federal law of the United States."
 {¶ 4} In March 2006, the Clinic filed a motion to dismiss DeMell's retaliatory wrongful termination claim pursuant to Civ.R. 12(B)(6). DeMell filed a brief in opposition in April 2006. The trial court granted the Clinic's Civ.R. 12(B)(6) motion in June 2006. In July 2006, DeMell voluntarily dismissed, without prejudice, her underpayment of wages claim. *Page 4 
 {¶ 5} DeMell now appeals, raising eight assignments of error. In her first assignment of error, she contends that the trial court should have confined its review of the motion to dismiss, pursuant to Civ.R. 12(B)(6), to the allegations in the complaint. In her second assignment of error, she contends that the trial court may not insert into the allegations of the complaint provisions of the Federal Fair Labor Standards Act ("FLSA") as an additional source of public policy, when the allegations of her complaint expressly reject such source. We will discuss these assignments of error together, because they involve the same standard of review.
 {¶ 6} Appellate review of a judgment granting a Civ.R. 12(B)(6) motion to dismiss is de novo. Perrysburg Twp. v. Rossford, 103 Ohio St.3d 79,2004-Ohio-4362, 814 N.E.2d 44. When reviewing such a judgment, an appellate court must accept the material allegations of the complaint as true and make all reasonable inferences in favor of the plaintiff.Maitland v. Ford Motor Co., 103 Ohio St.3d 463, 2004-Ohio-5717,816 N.E.2d 1061.
 {¶ 7} For a defendant to prevail on a Civ.R. 12(B)(6) motion, it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling relief. Cincinnati v. Beretta U.S.A. Corp.,95 Ohio St.3d 416, 2002-Ohio-2480, 768 N.E.2d 1136; Desenco, Inc. v.Akron, 84 Ohio St.3d 535, 538, 1999-Ohio-368, 706 N.E.2d 323. A court is confined to the averments set forth in the complaint and cannot consider outside evidentiary materials. Greeley v. Miami Valley Maintenance *Page 5 Contrs. Inc. (1990), 49 Ohio St.3d 228, 551 N.E.2d 981; State ex rel.Plaza Interiors v. Warrensville Heights (May 24, 2001), Cuyahoga App. No. 78267. Moreover, a court must presume that all factual allegations set forth in the complaint are true and must make all reasonable inferences in favor of the nonmoving party. Mitchell v. Lawson MilkCo. (1988), 40 Ohio St.3d 190, 532 N.E.2d 753; Kennedy v. Heckard, Cuyahoga App. No. 80234, 2002-Ohio-6805.
 {¶ 8} DeMell argues that the trial court's determination should have been confined to the actual allegations of the complaint and not included non-existent allegations that the Clinic sought to inject into the complaint. She maintains that the trial court disregarded the Ohio statutory public policy source under which she is seeking a remedy. We disagree.
 {¶ 9} In our review of the record, we find no evidence indicating that the trial court did not assume that all factual allegations set forth in the complaint were true. Furthermore, the public policy asserted by DeMell is not contingent upon the facts alleged in the complaint. Thus, the legal basis of her complaint, i.e., Chapter 4111 of the Ohio Revised Code, is not a factual allegation because it does not involve circumstances regarding her employment with the Clinic. Moreover, there is nothing in the record to indicate that the trial court inserted into the allegations of the complaint the provisions of the FLSA. The trial court used the FLSA in its analysis, *Page 6 
but did not "insert it into the allegations" of the complaint. Therefore, we find that the trial court confined its review to the allegations in DeMell's complaint.
 {¶ 10} Accordingly, the first and second assignments of error are overruled.
 {¶ 11} In the third assignment of error, DeMell contends that R.C.4111.13(B) is a valid public policy source for a claim alleging wrongful termination in violation of Ohio's public policy. In her fourth assignment of error, she argues that the public policy expressed in R.C.4111.13(B) is jeopardized because the statute imposes only a third degree misdemeanor upon a violating employer and does not provide a civil remedy for a wrongfully terminated employee. We will discuss these assignments of error together, because they involve the same evidence and standard of review.
 {¶ 12} Traditionally, an employer could terminate the employment of an at-will employee for any cause, at any time whatsoever, even if the termination was done in gross or reckless disregard of the employee's rights. Phung v. Waste Mgt, Inc. (1986), 23 Ohio St.3d 100, 102,491 N.E.2d 1114. However, in Greeley, supra, the Ohio Supreme Court recognized an exception to an employer's plenary right to terminate his employee's employment: an employer may not discharge an employee in violation of public policy. If an employer does so, the discharged employee may bring a tort cause of action against the employer. Id. *Page 7 
 {¶ 13} To assert a tort claim for wrongful discharge in violation of public policy, a plaintiff must establish each of the following four elements:
 "1. That a clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).
 4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element)."
 {¶ 14} Kulch v. Structural Fibers, Inc., 78 Ohio St.3d 134, 151,1997-Ohio-219, 677 N.E.2d 308, quoting H. Perritt, The Future of Wrongful Dismissal Claims: Where Does Employer Self Interest Lie? (1989), 58 U.Cin.L.Rev. 397, 398-399.
 {¶ 15} Of these four elements, the clarity and jeopardy elements are questions of law to be decided by the court. Collins v. Rizkana,73 Ohio St.3d 65, 70, 1995-Ohio-135, 652 N.E.2d 653. The causation and overriding justification elements are questions of fact to be decided by a jury. Id. The parties in the instant case do not dispute the clarity element but only the jeopardy element.
 {¶ 16} When analyzing the jeopardy element, a court must inquire "into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful-discharge claim." Wiles v. Medina Auto Parts, *Page 8 96 Ohio St.3d 240, 2002-Ohio-3994, 773 N.E.2d 526. If a statutory remedy which adequately protects society's interests already exists, then there is no need to recognize a claim for wrongful discharge in violation of public policy. Id. Moreover, in Painter v. Graley, 70 Ohio St.3d 377,1994-Ohio-334, 634 N.E.2d 51, the Ohio Supreme Court held that "an exception to the employment-at-will doctrine is justified where an employer has discharged his employee in contravention of a `sufficiently clear public policy.' The existence of such a public policy may be discerned by the Ohio judiciary based on sources such as the Constitutions of Ohio and the United States, legislation, administrative rules and regulations, and the common law."
Thus, the trial court may look to sources other than state law to analyze the jeopardy element.
 {¶ 17} DeMell and amicus curiae urge us to accept that the public policy embodied in R.C. 4111.13(B) is jeopardized because the statute imposes only a criminal penalty rather than a civil remedy. However, both the Ohio Minimum Wage Standards Act ("MWSA") and the FLSA manifest clear public policy requiring employers to pay an employee overtime at the rate of one and one-half times the employee's wage rate when working more than forty hours in one week. The MWSA gives the Director of Commerce the power to enter the place of business of any employer to inspect the employee time records and question employees to ascertain whether the employer has properly made and kept the records. See R.C. *Page 9 4111.04(B). If the employer has falsified employee time records, the MWSA imposes criminal liability under R.C. 4111.99(A) for each day of a violation.
 {¶ 18} Similar to MWSA, the FLSA gives the Secretary of Labor the power to investigate any employer to determine whether that employer has failed to make and keep accurate employee time records. See Section 211(a), Title 29, U.S. Code; White v. Sears, Roebuck Co.,163 Ohio App.3d 416, 2005-Ohio-5086, 837 N.E.3d 1275. If the employer willfully failed to make and preserve accurate employee records, the FLSA imposes criminal and civil penalties and provides adequate, alternative remedies. See Sections 215(a)(3), 216(a), and 216(b), Title 29, U.S. Code. In particular, Section 216(a) provides that: "[a]ny person who willfully violates any of the provisions of section 15 [29 USCS § 215] shall upon conviction thereof be subject to a fine of not more than $10,000, or to imprisonment for not more than six months, or both.* * *" Section 216(b) provides for "* * * legal or equitable relief as may be appropriate to effectuate the purposes of section 15(a)(3) [29 USCS § 215(a)(3)], including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.* * *" Furthermore, "[t]he court in such action shall, in addition to any judgment awarded to the plaintiff * * *, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." *Page 10 
 {¶ 19} In the instant case, the trial court looked to alternative means and found adequate remedies in the MWSA and the FLSA. "Given the regulatory oversight and the civil and criminal penalties, the public policy requiring the maintenance of accurate employee time records is adequately protected." White, supra at _28. Thus, we conclude that the public policy expressed in R.C. 4111.13(B) is not jeopardized by DeMell's discharge.
 {¶ 20} Accordingly, we find that the trial court properly dismissed DeMell's claim for wrongful discharge in violation of public policy.
 {¶ 21} Therefore, the third and fourth assignments of error are overruled.
 {¶ 22} In the fifth assignment of error, DeMell argues that the express holding in Wiles, supra, precludes a wrongful termination against public policy tort action only where the plaintiff's claimed source of public policy itself contains an adequate remedy. We disagree.
 {¶ 23} In Wiles, supra, the plaintiff was employed by Medina Auto Parts as the store manager, earning $21.20 per hour. Wiles requested a two-week leave of absence to care for his father. When he returned to work, his pay rate was reduced to $11 per hour, and he was demoted to "counter person." Wiles sued Medina Auto Parts, alleging that it constructively discharged him in retaliation for his exercising his rights under the Family Medical Leave Act ("FMLA"). Wiles did not seek recovery under FMLA, but rather he asserted a common law cause of action alleging that *Page 11 
Medina Auto Parts wrongfully discharged him in violation of public policy. Medina Auto Parts moved for summary judgment on the basis that Ohio does not recognize a cause of action for wrongful discharge which is based solely on the public policy expressed in the FMLA. The trial court granted the motion and the court of appeals affirmed.
 {¶ 24} The Wiles Court, after reviewing the history of the common law doctrine of employment-at-will in Ohio, addressed wrongful discharge based on the FMLA under the four-part test adopted in Collins, supra. In addressing the jeopardy element of a wrongful discharge tort, theWiles Court stated that:
 "An analysis of the jeopardy element necessarily involves inquiring into the existence of any alternative means of promoting the particular public policy to be vindicated by a common-law wrongful discharge claim. Where, as here, the sole source of the public policy opposing the discharge is a statute that provides the substantive right and remedies for its breach, `the issue of adequacy of remedies' becomes a particularly important component of the jeopardy analysis. `If the statute that establishes the public policy contains its own remedies, it is less likely that tort liability is necessary to prevent dismissals from interfering with realizing the statutory policy.' Simply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests. In that situation, the public policy expressed in the statute would not be jeopardized by the absence of a common-law wrongful-discharge action in tort because an aggrieved employee has an alternate means of vindicating his or her statutory rights and thereby discouraging an employer from engaging in the unlawful conduct." Id. (Citations omitted.)
 {¶ 25} The Court concluded that Ohio does not recognize a cause of action for wrongful discharge in violation of public policy when the cause of action is based *Page 12 
solely on a discharge in violation of the FMLA, because the FMLA provides the substantive right and remedies for its breach. Id.
 {¶ 26} In the instant case, DeMell argues that Wiles, supra, does not hold that a public policy wrongful termination claim under state law is barred simply because a federal remedy exists under a separate federal law. DeMell maintains that Wiles does not bar the courthouse doors in Ohio to employees who assert Greeley wrongful termination-public policy tort actions based on Ohio law simply because a federal statute provides a limited remedy. We disagree.
 {¶ 27} As noted above, the Wiles Court held that analysis of the jeopardy element involves inquiring into the existence of any alternative means of promoting the particular public policy. Moreover, the Court stated that "[s]imply put, there is no need to recognize a common-law action for wrongful discharge if there already exists a statutory remedy that adequately protects society's interests." Thus, if any alternative means are available, the jeopardy element will not be satisfied.
 {¶ 28} DeMell further contends that the Wiles decision is not controlling authority because it is a "plurality decision." DeMell's argument is misplaced.
 {¶ 29} This court has relied on and applied Wiles when analyzing public policy exceptions to Ohio's at-will employment laws. In Lewis v.Fairview Hosp., 156 Ohio App.3d 387, 2004-Ohio-1108, 806 N.E.2d 185, we relied on Wiles in analyzing the jeopardy element, stating that the trial court should look to any alternative means of *Page 13 
promoting the particular public policy to be vindicated by a common-law wrongful discharge claim. Furthermore, in Stricharczuk v. Ohio MotoristsAssn., Cuyahoga App. No. 85169, 2005-Ohio-2835, this court citedLewis and Wiles for the proposition that the plaintiff must establish the jeopardy element in order to state a wrongful termination public policy claim.
 {¶ 30} Moreover, under the doctrine of stare decisis we are required to adhere to the rule adopted and applied in our prior decisions. Since there has been no applicable intervening legislation or other significant change, the principles of stare decisis guide us. SeeNorthern Ohio Patrolmen's Benevolent Assn. v. Parma Heights (Nov. 18, 1982), Cuyahoga App. No. 44588. Therefore, we conclude thatWiles is controlling authority in this district.
 {¶ 31} DeMell also maintains that Collins, supra, holds that the issue of adequacy of remedies is confined to cases where the right and remedy are part of the same statute, which is the sole source of the claimed public policy.
 {¶ 32} In Collins, supra, the plaintiff brought a lawsuit against her employer for wrongful discharge because she claimed that he sexually harassed her. The trial court entered summary judgment in favor of the employer on Collins' wrongful discharge claim. In analyzing the jeopardy element, the Ohio Supreme Court determined that the availability of remedies under the Ohio Revised Code did not defeat her sexual harassment claim. Collins, supra. Specifically, the Collins Court *Page 14 
recognized that, although R.C. 4112.02 would adequately remedy the sexual harassment alleged by Collins, she could not avail herself of this remedy because her employer did not meet the minimum of four employees which was required for the statute to apply. TheCollins Court addressed a circumstance where the alternative remedy was not available to Collins because the public policy source excluded her. Thus, DeMell's argument is misplaced.
 {¶ 33} Therefore, the fifth assignment of error is overruled.
 {¶ 34} In her sixth assignment of error, DeMell argues that the FLSA does not preempt Chapter 4111 of the Ohio Revised Code. In the seventh assignment of error, DeMell argues that precluding her claim for wrongful termination in violation of R.C. 4111.13(B), because the FLSA provides a remedy, prevents Ohio employees from vindicating the Ohio public policy and thus violates the Ohio and United States Constitutions. In her eighth assignment of error, DeMell argues that the Ohio judiciary's "ceding the vindication of the sovereign enactments of the Ohio Legislature to the United States Congress, in the absence of federal preemption, violates the Separation of Powers Doctrine inherent in the Ohio Constitution." We disagree.
 {¶ 35} In the instant case, the issue before this court is whether the trial court's granting of the Clinic's Civ.R. 12(B)(6) motion was proper. The trial court did not rely on DeMell's preemption argument in rendering its decision, nor did it hold that the *Page 15 
FLSA preempted common law. Rather, the trial court looked at any available means of promoting the relevant public policy — whether state or federal. See Wiles, Collins, White, and Lewis, supra. Because there is no Ohio statute which provides an employee a specific civil remedy for wrongful termination based on a wage and hour complaint, the trial court looked to the FLSA for a civil remedy. Therefore, we need not reach the issues of preemption or constitutional rights which were never addressed by the trial court.
 {¶ 36} Accordingly, the sixth, seventh, and eighth assignments of error are overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant the costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, J. CONCURS; CHRISTINE T. McMONAGLE, J. CONCURS IN JUDGMENT ONLY. *Page 1